JAMES L. DENNIS, Circuit Judge,
concurring in part, dissenting in part:
Although I concur in the majority opinion’s disposition of Plaintiff-Appellant Tina
*617 Johnson’s claims against the generic manufacturers, I respectfully dissent from the resolution of Johnson’s claims against the brand-name drug manufacturers because I would grant Johnson’s motion to certify the question of state law to the Louisiana Supreme Court. Johnson seeks certification to the Louisiana Supreme Court of the question whether, under Louisiana law, a brand-name drug manufacturer may be held liable for harm caused by a consumer’s use of the generic manufacturer’s equivalent product — a drug that was not directly manufactured by the brand-name pharmaceutical corporation but, as the Supreme Court has explained, must contain labeling and warnings identical to that of the brand-name product under the “duty of sameness.” PLIVA Inc. v. Mensing, — U.S. -, 131 S.Ct. 2567, 2574-75, 180 L.Ed.2d 580 (2011). The question of whether Louisiana law imposes such liability should be certified to the Louisiana Supreme Court because it implicates significant public policy concerns with potentially grave ramifications, is dispositive as to Johnson’s claims against the brand-name defendants, and there is no Louisiana Supreme Court case law available to guide our analysis and only scant lower state court authority that is called into doubt by Mensing. See In re Katrina Canal Breaches Litig., 613 F.3d 504, 509 (5th Cir.2010) (“[Certification may be advisable where important state interests are at stake and the state courts have not provided clear guidance on how to proceed.” (quoting Free v. Abbott Labs., Inc., 164 F.3d 270, 274 (5th Cir.1999))); see also Jesco Const. Corp. v. NationsBank Corp., 278 F.3d 444, 448 (5th Cir.2001) (“We have [certified a question] in the past when we determined that the issue carried ‘tremendous consequences’... [or] widespread ramifications....”) (internal citations omitted).
The Louisiana Supreme Court has never addressed the extent of brand-name manufacturers’ liability to consumers of the generic equivalents. There is only one Louisiana Court of Appeals case on point and it’s questionable whether its reasoning stands today. In Stanley v. Wyeth, Inc., 991 So.2d 31 (La.App. 1st Cir.2008), the Court of Appeal of Louisiana, First Circuit, held that the plaintiff failed to state a claim against the brand-name manufacturers for negligent misrepresentation because brand defendants do not owe a duty to consumers of the generic equivalent. Id. at 33. In holding that brand-name defendants owe no duty to consumers of the generic equivalent, the Stanley court reasoned that “a manufacturer cannot reasonably expect that consumers will rely on the information it provides when actually ingesting another company’s drug.” Id. at 34. The court in Stanley therefore based its holding on pre-Mensing assumptions: that consumers of generic drugs do not rely upon the brand-name manufacturer’s representations or warnings as to the risks of harm to consumers, and that a generic manufacturer’s “acceptance” of the brand-name manufacturer’s label, is something of a choice. Id. Such reasoning is belied by Mensing’s holding that, under federal law, a generic manufacturer’s label and communications must be the same as the brand-name equivalent, and the generic manufacturer is prohibited from unilaterally communicating to consumers any message different than that communicated by the brand name manufacturer. Thus, it is perfectly foreseeable, if not inevitable, that, post-Mensing, consumers of generic drugs and their physicians will rely exclusively upon the brand-name manufacturer’s label to assess the safety risks of the generic drug equivalent. Mensing thus calls Stanley — the sole Louisiana Court of Appeal decision on this issue — -into ques *618 tion.[1] Accordingly, the majority’s Erie guess that, under Louisiana law, a brand-name manufacturer is not liable to a consumer of the generic equivalent for failure to warn rests primarily on a single Louisiana Court of Appeals case, that, after Mensing, is questionable, if not erroneous. There is absolutely no post-Mensing state law authority on the current state of Louisiana law.
Without any authoritative guidance from Louisiana courts, the majority’s opinion completely closes the courthouse doors to Louisiana consumers injured by inadequately labeled generic pharmaceutical products. By declining to certify the question to the Louisiana Supreme Court and affirming the district court’s decision below, both generic and brand-name pharmaceutical companies are essentially immunized from private suits by consumers of generic drugs, who make up an overwhelming majority of pharmaceutical consumers. Today, “nearly 8 in 10 of prescriptions are filled with generic drugs. The use of generic drugs is expected to grow over the next few years as a number of popular drugs come off patent through 2015.” See Facts About Generic Drugs, U.S. Food and Drug Administration, http:// www.fda.gov/drugs/resourcesforyou/ consumers/buyingusingmedicinesafely/ understandinggenericdrugs/ucml67991.htm (last visited July 9, 2014). The threat of private suits for damages provides substantial incentives to pharmaceutical manufacturers to effectively warn consumers of the safety risks associated with consumption of their products. The majority eviscerates this incentive for brand-name manufacturers, who control the content of the warning labels and communications to the public for both brand and generic drug equivalents, and thus will have “tremendous consequences” for the health and safety of consumers of pharmaceutical products in Louisiana. Jesco, 278 F.3d at 448.
Tort claims against the manufacturer of drugs that allegedly inadequately warn the consumer as to potential risks are common. Given the nature of the parties involved,' — Louisiana has many consumers of generic drugs but is home to few, if any, drug manufacturers — cases raising this issue will invariably be litigated in federal court, pursuant to diversity jurisdiction. See 28 U.S.C. §§ 1332, 1441. Therefore, by denying Johnson’s motion to certify the question to the Louisiana Supreme Court, the majority ensures that federal courts facing the issue will continue down this uncharted path of attempting to interpret a true “creature of state law,” Rubino v. Lynaugh, 845 F.2d 1266, 1275 (5th Cir.1988), in the absence of any authoritative precedent, effectively barring the Louisiana Supreme Court the opportunity to articulate the meaning of its own tort law relating to the health and protection of Louisiana citizens, and thereby offending basic principles of comity.
Lastly, as Johnson notes in her motion to certify, an identical question was recently certified to the Alabama Supreme Court by the United States District Court for the Middle District of Alabama. Despite federal precedent interpreting Alabama law *619 as precluding liability for brand-name defendants, once the question was certified, the Alabama Supreme Court concluded, contra to the earlier federal court decisions, that brand-name defendants are liable to consumers of the generic equivalent product for failing to provide adequate warnings. The Alabama Supreme Court discussed Mensing and its implications in concluding that under Alabama law, “a brand-name drug company may be held liable for fraud or misrepresentation (by misstatement or omission), based on statements it made in connection with the manufacture of a brand-name prescription drug, by a plaintiff claiming physical injury caused by a generic drug manufactured by a different company.” Wyeth, Inc. v. Weeks, No. 11-01397, — So.3d -, 2013 WL 135753 (Ala. Jan. 11, 2013), reh’g granted (June 13, 2013). The Alabama Supreme Court’s answer to the certified question rejected federal courts’ contrary decisions applying Alabama law, which had “held that Alabama law does not allow a person who consumed a generic version of a brand-name drug to sue the brand-name manufacturer based on fraudulent misrepresentation.” Id. at ---, 2013 WL 135753 at *9-10 (discussing and rejecting, for example, Overton v. Wyeth, Inc., No. CA 10-0391, 2011 WL 1343392 (S.D.Ala.2011) (unpublished), because the Overton court’s “conclusion that a generic manufacturer becomes responsible for its own warning label ... is incorrect” in light of Mensing). The Louisiana Supreme Court should be afforded the same opportunity, particularly given the lack of a state Supreme Court case and the significant impact that this panel’s decision will have on Louisiana citizens’ ability to seek redress for serious bodily injury caused by the consumption of an allegedly inadequately labeled generic drug.
In conclusion, because there is no precedent from the Louisiana Supreme Court on this case-dispositive issue, the prior Louisiana case law is based on reasoning now undermined by Mensing, and the question implicates significant public policy concerns with potentially severe ramifications for the people of Louisiana, I respectfully dissent from the majority opinion’s resolution of Johnson’s claims against the brand-name manufacturers and would grant Johnson’s motion to certify the question to the Louisiana Supreme Court.

. I acknowledge that, as discussed in Part III of the majority opinion, our court has previously rejected an argument that Mensing altered Louisiana law. Demahy, 702 F.3d at 183. The Demahy decision, however, relies upon our court's and federal district courts’ opinions interpreting Louisiana law and nowhere cites any authoritative Louisiana Supreme Court case. Id. (citing, inter alia, Stahl v. Novartis Pharms. Corp., 283 F.3d 254, 260-61 (5th Cir.2002), and Possa v. Eli Lilly & Co., No. 05-CV-1307, 2006 WL 6393160 (M.D.La. May 10, 2006), for the proposition that "recovery is not available against a manufacturer if the manufacturer did not produce the offending product”).