**Opinion filed July 31, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00176-CV

_____

**CHARLES CLAY WARNER, JR., Appellant**
**V.**
**TDCJ-CID et al., Appellees**

**On Appeal from the 259th District Court**
**Jones County, Texas**
**Trial Court Cause No. 022703**

## MEMORANDUM OPINION

Appellant, Charles Clay Warner, Jr., is incarcerated at the French Robertson Unit of the Institutional Division of the Texas Department of Criminal Justice, located in Jones County, Texas. Appearing pro se and in forma pauperis, Appellant challenges the dismissal of his suit with prejudice by the trial court. We modify and affirm.

### I. *Background*

On February 27, 2012, Appellant filed the underlying action against the Texas Department of Criminal Justice (TDCJ) and over eighty additional

defendants, including prison officials, government entities, and pharmaceutical manufacturers.[1]  Appellant alleged that Appellees were responsible for providing him Reglan/metoclopramide, a medicine to treat nausea, while he received chemotherapy treatment for his chronic myelogenous leukemia.

Appellant alleged that he was prescribed Reglan from February 2005 to September 2009.  Appellant claimed that he suffered serious side effects, including the development of tardive dyskinesia, from taking Reglan for an extended period of time.  According to Appellant, on February 26, 2009, the United States Food and Drug Administration (FDA) published a newsletter warning of a link between long-term Reglan use and the development of tardive dyskinesia.  Appellant alleged that he continued to receive Reglan for approximately six months after prison medical personnel became aware of the FDA's warning.

Appellant asserted various claims against the governmental units and pharmaceutical manufacturers, including claims under the Texas Tort Claims Act and the Texas Deceptive Trade Practices Act and claims for products liability and fraudulent concealment/failure to disclose.  Appellant sought declaratory and injunctive relief, compensatory damages, punitive damages, and attorney's fees. The trial court entered final judgment dismissing all claims as frivolous in accordance with Chapter Fourteen of the Texas Civil Practice & Remedies Code.

## II. *Issues Presented*

Appellant presents the following two issues on appeal, which are paraphrased as follows:

> 1.    Did the trial court abuse its discretion when it dismissed Appellant's lawsuit with prejudice on the grounds that Appellant's claims were frivolous pursuant to Chapter Fourteen of the Texas Civil Practice and Remedies Code?

---

[1]Because Appellant identifies numerous defendants throughout his pleadings, please refer to the clerk's record for a complete listing of all defendants in this case.

2.     Did the trial court abuse its discretion when it dismissed Appellant's claims against the pharmaceutical manufacturers if such claims were not subject to the grievance procedures provided by Chapter Fourteen of the Texas Civil Practice and Remedies Code and Section 501.008 of the Texas Government Code?

### III. *Standard of Review*

We review a trial court's dismissal of an inmate's suit under Chapter Fourteen for abuse of discretion. *See Wilson v. TDCJ-ID*, 268 S.W.3d 756, 758 (Tex. App.—Waco 2008, no pet.); *Bishop v. Lawson*, 131 S.W.3d 571, 574 (Tex. App.—Fort Worth 2004, pet. denied); *Thompson v. Tex. Dep't of Criminal Justice—Inst. Div.*, 33 S.W.3d 412, 414 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).  A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex. 1999).  When reviewing matters committed to the trial court's discretion, we may not substitute our own judgment for that of the trial court. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992).

### IV. *Analysis*

Appellant complains of the trial court's failure to hold a fact hearing to address the question of whether his claims had an arguable basis in law, under Chapter Fourteen of the Texas Civil Practice and Remedies Code, before the trial court dismissed the suit.  Chapter Fourteen applies to lawsuits filed by an inmate in a district court, county court, justice of the peace court, or small claims court where the inmate files an affidavit or unsworn declaration of indigency. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 14.002 (West Supp. 2013).

Chapter Fourteen establishes certain procedural requirements that an inmate must satisfy as a prerequisite to filing suit. *Id*. §§ 14.002, 14.004 (West Supp. 2013), §§ 14.005–.006 (West 2002); *see also Lilly v. Northrep*, 100 S.W.3d 335, 336 (Tex. App.—San Antonio 2002, pet. denied). The legislature enacted Chapter

3

Fourteen to control the flood of frivolous lawsuits being filed in Texas courts by prison inmates because these suits consume many valuable judicial resources with little offsetting benefits. *Sullivan v. Owens*, 418 S.W.3d 128, 130 (Tex. App.—Eastland 2011, no pet.); *Bishop*, 131 S.W.3d at 574.

Even if an inmate satisfies the necessary filing requirements, the trial court may dismiss an inmate's claim if it finds the claim to be frivolous or malicious. CIV. PRAC. & REM. § 14.003(a)(2); *Comeaux v. Tex. Dep't of Criminal Justice*, 193 S.W.3d 83, 86 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

A claim is frivolous or malicious if it has no basis in law or fact or if its realistic chance of ultimate success is slight. CIV. PRAC. & REM. § 14.003(b). An inmate filing suit under Chapter Fourteen has no right to be heard, and the determination of whether to hold a hearing is within the trial court's discretion. *See id.* § 14.003(c); *Thomas v. Wichita Gen. Hosp.*, 952 S.W.2d 936, 938 (Tex. App.—Fort Worth 1997, pet. denied). When an inmate's lawsuit is dismissed as frivolous for having no basis in law or in fact, but no fact hearing is held, our review focuses on whether the inmate's lawsuit has an arguable basis in law. *See* CIV. PRAC. & REM. § 14.003; *Scott v. Gallagher*, 209 S.W.3d 262, 266 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Spurlock v. Johnson*, 94 S.W.3d 655, 658 (Tex. App.—San Antonio 2002, no pet.).

A claim has no arguable basis in law if it is based on an indisputably meritless legal theory. *Scott*, 209 S.W.3d at 266–67. Furthermore, a claim has no arguable basis in law if the inmate has failed to exhaust his administrative remedies. *Retzlaff v. Tex. Dep't of Criminal Justice*, 94 S.W.3d 650, 653 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). If an inmate fails to exhaust his administrative remedies, we may affirm a dismissal even if the ground was not presented in a motion to dismiss. CIV. PRAC. & REM. § 14.005; *Retzlaff*, 94 S.W.3d at 653.

In conducting our review, we take as true the allegations in the inmate's petition and review the types of relief and causes of action set out therein to determine whether, as a matter of law, the petition stated a cause of action that would authorize relief. *See Lopez v. Serna*, 414 S.W.3d 890, 893 (Tex. App.—San Antonio 2013, no pet.) (citing *Spurlock*, 94 S.W.3d at 658); *Scott*, 209 S.W.3d at 266; *Harrison v. Tex. Dep't of Criminal Justice, Inst. Div.*, 164 S.W.3d 871, 875 (Tex. App.—Corpus Christi 2005, no pet.). Because the trial court did not conduct a hearing in this case, the issue is whether the trial court properly determined that there was no arguable basis in law for Appellant's claims. *See Scott*, 209 S.W.3d at 266; *Retzlaff*, 94 S.W.3d at 653. We will first address that question as to Appellant's claims against the TDCJ and other governmental units, and we will then address that question as to Appellant's claims against the pharmaceutical manufacturers.

### A. Claims Against TDCJ, Other Governmental Units, and Their Employees

Section 14.005 establishes requirements for an inmate who files a claim that is subject to the grievance system established under TEX. GOV'T CODE ANN. § 501.008 (West 2012). Section 501.008 of the Texas Government Code directs the TDCJ to create a grievance system for inmates. According to Section 501.008(a),

> A remedy provided by the grievance system is the exclusive administrative remedy available to an inmate for a claim for relief against the department that arises while the inmate is housed in a facility operated by the department or under contract with the department, other than a remedy provided by writ of habeas corpus challenging the validity of an action occurring before the delivery of the inmate to the department or to a facility operated under contract with the department.

GOV'T § 501.008(a). Because Appellant's claims against TDCJ, the other governmental units, and their employees arose while he was housed in a facility

5

operated by TDCJ, they are subject to the grievance system. *See Wolf v. Tex. Dep't of Criminal Justice, Inst. Div.*, 182 S.W.3d 449, 450 (Tex. App.—Texarkana 2006, pet. denied).

In compliance with Section 501.008, the TDCJ created an "Offender Orientation Handbook," which sets out time frames in which grievances must be brought. The Step One grievance form must be completed and forwarded to the Unit Grievance Investigator within fifteen days of the date of the incident on which it is based. TEX. DEP'T OF CRIM. JUSTICE, OFFENDER ORIENTATION HANDBOOK, p. 53 (Nov. 2004), *available at* http://www.tdcj.state.tx.us/documents/ Offender_Orientation_Handbook_English.pdf.

The exhaustion of remedies requirement under Section 501.008 of the Government Code and Section 14.005 of the Civil Practice and Remedies Code requires proper exhaustion of remedies, including the procedural requirements of the grievance system, before an inmate may seek judicial review. *Leachman v. Dretke*, 261 S.W.3d 297, 310–11 (Tex. App.—Fort Worth 2008, no pet.); *see also Woodford v. Ngo*, 548 U.S. 81, 83–84 (2006). Thus, an inmate who fails to timely file his grievances before filing a lawsuit is subject to having that lawsuit dismissed with prejudice under Chapter Fourteen. *See Simmonds v. Harrison*, 387 S.W.3d 812, 814–15 (Tex. App.—Eastland 2012, no pet.); *Leachman*, 261 S.W.3d at 310–11.

Appellant's Amended Original Petition alleged that, on February 26, 2009, the FDA issued its admonishment and recall that warned of the link between Reglan use and the development of tardive dyskinesia. Appellant alleged that the defendants continued to use or promote the use of this drug upon Appellant and other prisoners for an additional six months after the February 26, 2009 warning. Appellant further alleged that he was diagnosed with tardive dyskinesia in April 2011. According to Appellant, he did not become aware of the FDA's warning

until September 28, 2011, when the FDA contacted Appellant and sent him medical data regarding the dangers of Reglan use. The Step One grievance was due fifteen days after the incident occurred. However, the document was signed by Appellant and dated by him on November 14, 2011. Thus, regardless of whether we use the date that Appellant last consumed Reglan or the date that Appellant became aware of the FDA's warning, the Step One grievance was not timely.

Appellant argues that the date of the incident that triggered the fifteen-day deadline to file the Step One grievance was November 9, 2011, when Appellant generated communication with Dennis Melton, the Unit Health Administrator. Appellant alleges that he contacted Melton regarding the FDA's warning and requested that Melton assist Appellant in obtaining another medication for nausea that did not have the risks described in the FDA's warning. Appellant claimed to have been prescribed Reglan only for a period of six months after the February 26, 2009, warning. Appellant was then placed on Compazine/prochlorperazine from September 2009 to January 2011. Appellant was taken off that medication and given Phenergan/promethazine from January 2011 to September 2011. Appellant has not provided any evidence that the FDA's warning regarding the long-term effects of metoclopramide included Compazine/prochlorperazine or Phenergan/promethazine. Accordingly, Appellant has not articulated any injury or claim that resulted from Melton's failure to address Appellant's communication that allegedly occurred on November 9, 2011. As such, the alleged communication did not trigger the fifteen-day deadline with respect to the incident giving rise to Appellant's filing of a Step One grievance.

Appellant also argues that the untimeliness of his Step One grievance filing was waived because the TDCJ officials reviewed the grievance and made a determination on the merits of his claim. At the outset, we note that Appellant's Step One grievance did not provide the dates that his injury occurred. The only

7

date mentioned in the grievance was November 9, 2011—the date Appellant generated communication with Melton regarding the FDA's warning and Appellant's desire to obtain different medication. As such, Appellant's Step One grievance gave the mistaken perception that it was timely, although Appellant waited until he filed his subsequent lawsuit to provide the dates of his Reglan consumption and tardive dyskinesia diagnosis. Moreover, Appellant has failed to provide any authority to show that the acceptance and processing of an untimely grievance operates as a waiver of the grievance filing deadlines. *See Wolf*, 182 S.W.3d at 451.

Even if we assume that Appellant adequately complied with the administrative procedures so that a final administrative decision was made, his grievance failed to request the relief that he sought through the courts. The grievance itself is not framed in terms of a claim of injury seeking damages. The grievance only requested that Appellant be given assistance in receiving different medication that did not pose the risks associated with metoclopramide. In fact, the grievance stated, "There is no satisfactory remedy for the illegal actions of the governmental unit and contractors on this level of exhaustion." Given these shortfalls, we cannot conclude that the trial court acted arbitrarily or without reference to guiding rules and principles when it dismissed Appellant's claims against the TDCJ and its employees. Because Appellant failed to properly exhaust his administrative remedies through the grievance procedure, dismissal with prejudice was warranted pursuant to Chapter Fourteen. *See Leachman*, 261 S.W.3d at 310–312; *Wolf*, 182 S.W.3d at 451. We overrule Appellant's first issue.

### B. Claims Against Generic Pharmaceutical Manufacturers

In addition to filing suit against the TDCJ, government officials, and TDCJ employees, Appellant brought several claims against the generic manufacturers of Reglan, Compazine, and Phenergan, which are metoclopramide, prochlorperazine,

and promethazine. Appellants' Texas law claims against the generic pharmaceutical manufacturers have no arguable basis in law because they are preempted by federal law. *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567, 2574 (2011). In *Mensing*, the Supreme Court outlined two key points regarding preemption of state law claims. First, under federal law, generic manufacturers of a prescription drug are not permitted unilaterally to change the labeling on that drug, even if that change "strengthens" the warnings. *Id.* at 2575 (accepting FDA's interpretation of regulations that "changes unilaterally made to strengthen a generic drug's warning label would violate" laws requiring a generic drug label to match the brand name counterparts). Second, any state law tort claim that is based on a generic manufacturer's failure to warn based on a failure to update the labeling on its drug directly conflicts with this federal law requirement and is therefore preempted. *See id.* at 2577–78. Appellant's Texas product liability claims are disposed of against the generic manufacturers because he premised those claims on the generic defendants' failure to warn adequately about the dangers associated with metoclopramide and two other generic drugs. But as *Mensing* explains, generic defendants were prohibited from unilaterally doing so under federal law. *See id.*; *see also Lashley v. Pfizer, Inc.*, 750 F.3d 470, 473–76 (5th Cir. 2014) (holding failure-to-warn claims in identical factual setting preempted). We overrule Appellant's issue as to generic pharmaceutical manufacturers.

## C.  Claims Against Brand Name Pharmaceutical Manufacturers

Appellant also brought several claims against the manufacturers of Reglan, Compazine, and Phenergan. Chapter Fourteen requires the inmate to file an affidavit or declaration relating to previous filings in which the inmate must detail all previous actions filed pro se, other than a suit under the Family Code. Civ. Prac. & Rem. § 14.004(a); *Amir–Sharif v. Mason*, 243 S.W.3d 854, 857 (Tex. App.—Dallas 2008, no pet.). Section 14.004(a)(2)(A) requires the inmate to state

the operative facts for each lawsuit or action that he or she has previously brought so that the trial court can determine if the instant suit is the same as any of the prior lawsuits. CIV. PRAC. & REM. § 14.004(a)(2)(A).

The failure to file the affidavit with the required information can result in dismissal without notice or hearing. *Amir–Sharif*, 243 S.W.3d at 857; *Thompson v. Rodriguez*, 99 S.W.3d 328, 329–30 (Tex. App.—Texarkana 2003, no pet.); *Jackson v. Tex. Dep't of Criminal Justice–Inst. Div.*, 28 S.W.3d 811, 814 (Tex. App.—Corpus Christi 2000, pet. denied). When an inmate fails to comply with the affidavit requirements, the trial court may assume that the current action is substantially similar to one previously filed by an inmate and thus is frivolous. *Altschul v. TDCJ–Inmate Trust Fund Div.*, No. 10-11-00084-CV, 2012 WL 851681, at *1 (Tex. App.—Waco Mar. 14, 2012, pet. denied) (mem. op.); *Bell v. Tex. Dep't of Criminal Justice*, 962 S.W.2d 156, 158 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).

In this case, Appellant filed an affidavit that listed five suits in which negligence, medical negligence, gross negligence, or conspiracy were alleged as causes of action. No operative facts were given about the cases. And, although Appellant mentioned the TDCJ or its employees, as named parties, he did not list all defendants so that the trial court could compare that list against the numerous defendants in this suit. *See* CIV. PRAC. & REM. § 14.004(a)(2)(C). In addition, Appellant did not list the operative facts that gave rise to the claims in the prior suits so that they could be compared to the negligence, conspiracy, and other claims advanced in this case. *See id.* at § 14.004(a)(2)(A). Because Appellant has alleged similar causes of action against the brand name pharmaceutical manufacturers in this case and because he did not state the operative facts for claims in his prior suits, we cannot conclude, after reviewing his affidavit and pleadings, that the trial court erred in dismissing his claims as frivolous. Having

determined that the trial court properly dismissed Appellant's claims against the brand name pharmaceutical manufacturers, we overrule Appellant's second issue.

## V. *This Court's Ruling*

We hold that the trial court did not err in dismissing the claims with prejudice against all defendants except that the trial court's dismissal of the suit, as frivolous, against the brand name pharmaceutical manufacturers should have been without prejudice. *See id.* We modify the judgment to reflect that the claims against the brand name pharmaceutical manufacturers were dismissed without prejudice. As modified, we affirm the judgment of the trial court.


MIKE WILLSON

JUSTICE


July 31, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

11